RECEIVED

DEC 1 1 2015

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE LITHIUM ION BATTERIES ANTITRUST LITIGATION DIRECT AND INDIRECT PURCHASER ACTIONS | Civil File No. 15mc96 DSD/TNL<br>Miscellaneous Action<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER BARRING ENFORCEMENT OF PLAINTIFFS' SUBPOENAS** |

Movants Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., SANYO North America Corporation, Hitachi Maxell, Ltd., Maxell Corporation of America, LG Chem, Ltd., LG Chem America, Inc., NEC Corporation, NEC TOKIN Corporation, Sony Corporation, Sony Electronics, Inc., and Sony Energy Devices Corporation ("Defendants") move under Fed. R. Civ. P. 45(d)(3) to quash or, in the alternative, under Fed. R. Civ. P. 26(c) for a protective order barring enforcement of, Direct and Indirect Purchaser Plaintiffs' ("Plaintiffs") subpoenas to third parties AT&T Corp. ("AT&T"), Sprint Spectrum, L.P. ("Sprint"), Cellco Partnership d/b/a Verizon Wireless ("Cellco"), and Verizon Legal Compliance ("Verizon") (collectively, the "Phone Carriers"), issued in connection with the action titled *In re Lithium Ion Batteries Antitrust Litig.* ("*Batteries*"), No. 13-md-02420 (N.D. Cal.).



SCANNED
DEC 1 4 2015
U.S. DISTRICT COURT MPLS

## PRELIMINARY STATEMENT

This motion and the related subpoenas arise from the *Batteries* antitrust class actions under the Sherman Act and state antitrust laws, which have been relocated by the Judicial Panel for Multidistrict Litigation to the Northern District of California for coordinated pretrial proceedings. The Plaintiffs in those actions allege a conspiracy among Defendants to fix the prices of lithium ion battery cells between the years of 2000 and 2011, and allege that, as a result, they paid inflated prices for lithium ion battery "packs" and products containing them, such as laptops, cell phones, portable music players, cameras and power tools. Defendants strongly contest those allegations.

This motion relates to five subpoenas Plaintiffs submitted to the Phone Carriers, seeking phone records that ostensibly relate to Defendants and their employees. The subpoenas seek private and personal information including the dates, times and phone numbers of incoming and outgoing calls and texts, as well as call durations and subscriber information.[1] Plaintiffs seek a comprehensive set of such data for a list of 88 phone numbers.[2] Moreover, Plaintiffs made no attempt to tailor the time periods of their requests to specific periods they believed were relevant; instead, they simply requested records for the same *seven or twelve year* period for almost every phone number entry.

---

[1] *See* Amato Decl. ¶¶ 2-3 & Ex. A [Direct and Indirect Purchaser Plaintiffs' Notice of Subpoenas for Production of Documents Pursuant to Fed. R. Civ. P. 45, Nov. 18, 2015 ("Nov. 18, 2015 Notice"), at Document Requests], Ex. B [Direct and Indirect Purchaser Plaintiffs' Notice of Subpoena for Production of Documents Pursuant to Fed. R. Civ. P. 45, Dec. 3, 2015 ("Dec. 3, 2015 Notice"), at Document Request].

[2] Twenty-eight of the 88 phone number entries are duplicates submitted to multiple Phone Carriers. *See supra* note 1.

Courts regularly quash much narrower subpoenas for phone records on grounds of overbreadth, and this Court should do the same.

Plaintiffs have not offered any basis for finding that the requested records for each phone number are relevant to their antitrust claims throughout these vast and untailored time periods, nor could they. Following just a preliminary review, Defendants have confirmed that for many of the phone number entries, the relevant employees who used those numbers were *not even employed* by Defendants during the entire time periods listed. In other instances, Plaintiffs seek records for U.S. phone numbers of Asia-based employees who did not reside or work in the United States until many months or even years after the start of the time periods for which Plaintiffs request information. Plaintiffs' complete failure to verify the relevance of these phone numbers is also underscored by the fact that many entries are actually *fax* numbers.

This untailored dragnet that Plaintiffs would conduct goes far beyond the relevance-based discovery permitted under the Federal Rules. Moreover, these subpoenas, many of which are demonstratedly overbroad by multiple years, will sweep in troves of irrelevant business and personal communications of Defendants' employees—and potentially even private individuals who formerly used those numbers and have no connection to the *Batteries* litigation. The subpoenas thus infringe upon legally recognized privacy rights and interests of Defendants, their employees and, potentially, unrepresented third parties. Weighed against this massive invasion of privacy and confidentiality, the lack of demonstrated relevance is even more clearly fatal to Plaintiffs' claims under the newly heightened proportionality requirement of Rule 26(b)(1).

3

Another independently fatal flaw with Plaintiffs' subpoenas is their failure to comply with Section 2891 of the California Public Utilities Code, which prohibits phone carriers from producing phone records in response to a subpoena absent written consent from the residential subscriber. Plaintiffs have failed to show that the phone numbers they listed do not belong to residential subscribers in California, such as employees of Defendants who used personal cell phones partly for business, or, alternatively, that Plaintiffs obtained their consent. On the contrary, during related meet and confers, Plaintiffs conceded that Section 2891's consent requirement applied to their subpoenas, and that they had not obtained such consent.[3] In fact, Sprint objected to Plaintiffs' subpoena and refused to produce information about California subscribers on that basis.[4]

The parties have met and conferred in good faith about these issues on December 1, 3 and 10, 2015, but have been unable to reach any resolution.[5] Accordingly, Defendants move the Court to quash or, in the alternative, to grant a protective order barring enforcement of the Plaintiffs' subpoenas.

## FACTUAL BACKGROUND

On February 6, 2013, the Judicial Panel for Multidistrict Litigation relocated a number of class actions alleging violations of the Sherman Act and various state antitrust

---

[3] Brown Decl. ¶ 10.

[4] See Amato Decl. Ex. C [Ltr. from Sprint Subpoena Compliance Dep't to Brian Clark, Nov. 19, 2015.]

[5] Brown Decl. ¶ 5. During the course of meet and confer sessions, Plaintiffs agreed to grant Defendants an extension to file this motion until Friday, December 11, 2015. *Id.*; *see also* Fed. R. Civ. P. 29(b) ("Unless the court orders otherwise, the parties may stipulate that . . . procedures governing or limiting discovery be modified . . . ").

laws relating to lithium ion battery cells to the Northern District of California for coordinated pretrial proceedings. *See In re Lithium Ion Batteries Antitrust Litig.* ("*Batteries*"), No. 13-md-02420, ECF No. 1 (N.D. Cal. Feb. 6, 2013). Following relocation, the class Plaintiffs filed two consolidated class action complaints, subsequently amended, alleging that Defendants engaged in a conspiracy to fix the prices of lithium ion battery cells, spanning from January 1, 2000 to May 31, 2011. Plaintiffs are direct and indirect purchasers of lithium ion battery "packs" and the finished consumer electronics products containing them, such as laptops and cell phones.[6] The parties are now engaged in document and deposition discovery.

On November 18, 2015, Plaintiffs faxed a subpoena to each of the Phone Carriers, apparently without serving them in-person.[7] Together, these subpoenas requested records for 80 phone number entries, as well as "any and all associated phone numbers," including the following categories of information:

> (1) records of "talk" and/or "call details," including the number a call is received from or made to, whether the call is incoming or outgoing, the date and time of the call (Pacific Time Zone), the length of the call, and, to the extent such

---

[6] *See* Indirect Purchaser Plaintiffs' Third Consolidated Amended Compl. ¶ 4, *Batteries*, No. 13-md-02420, ECF No. 519 (N.D. Cal. Oct. 22, 2014); Direct Purchaser Plaintiffs' Second Consolidated Amended Compl. ¶¶ 1-6, *Batteries*, No. 13-md-02420, ECF No. 415 (N.D. Cal. Mar. 26, 2014).

[7] *See* Amato Decl. ¶¶ 2-3 & Ex. A [Nov. 18, 2015 Notice at Subpoenas], Ex. B [Dec. 3, 2015 Notice at Subpoena]. Notably, such service by fax is not permitted under Rule 45(b)(1). *See Firefighter's Institute for Racial Equality ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) ("Rule 45(b)(1) may allow service by other than personal delivery, [but] *it is not broad enough to include either fax or regular mail because the court cannot be assured that delivery has occurred.*") (emphasis added).

> information is available or maintained separately, any calls to
> check voicemail and (2) text message report, including the
> incoming and outgoing phone numbers, the date and time the
> message was sent and received, and the number of messages
> sent, and (3) subscriber information.[8]

Subsequently, on December 3rd, Plaintiffs served a second subpoena on AT&T

seeking the same information for eight additional phone number entries, which were

duplicates of numbers in the subpoena to Verizon.[9]   For 58 of these phone number

entries, Plaintiffs seek all available records from January 1, 2004 through May 31, 2011;

for 17 other entries, Plaintiffs seek records from January 1, 2000 through either May 31,

2011 or December 31, 2011; and for the remaining 13 entries, Plaintiffs seek records over

various other multi-year periods.   The area codes for these phone numbers also span

multiple states, including California, Florida, Illinois, New Jersey and Texas.[10]

A limited and non-exhaustive review of employment records from just a handful

of Defendants illustrates how broad and untailored these subpoenas are.  For example, at

least 15 phone number entries on the subpoenas relate to employees who Defendants

have confirmed were *not* employed throughout the entire periods for which their phone

records were requested.[11]   Defendants have at this time only partially reviewed

---

[8] Amato Decl. ¶ 2 & Ex. A [Nov. 18, 2015 Subpoenas at Document Requests].  The subpoena to Sprint Spectrum, L.P., which included six of these 80 phone numbers, sought only subscriber information.

[9] *Id.* ¶ 3 & Ex. B [Dec. 3, 2015 Subpoena at Document Request].

[10] *See generally* Amato Decl. & Ex. A [Nov. 18, 2015 Notice at Document Requests], Ex. B [Dec. 3, 2015 Notice at Document Request]; Brown Decl.; McGowan Lemberg Decl.; Poon Decl.; Van Panhuys Decl.

[11] *See supra* note 10.

employment records of entities affiliated with certain Defendants, and expect that the time periods for other listed phone numbers may be overly broad in the same respect.

Moreover, without performing any employee-by-employee review, Defendants have observed that at least 14 additional entries for U.S. phone numbers relate to Asia-based employees who did not even transfer to the United States until months or years after the start of the time periods for which records were requested, or left the United States years before the cutoff dates of Plaintiffs' requests.[12] Again, Defendants expect that a similar proportion of phone number requests associated with the other Defendant groups are overbroad in this same respect.

In addition, Defendants have confirmed that at least 11 of the "phone" numbers listed on the subpoenas are actually fax numbers, for which the requested categories of information—such as "the length of the call"—are nonsensical.[13]

In their subpoenas and accompanying materials, Plaintiffs request that the Phone Carriers e-mail them the requested documents, but specify that the subpoenas' place of compliance is a law firm in Minneapolis—rather than one of Plaintiffs' multiple firms in San Francisco where the MDL has been coordinated.[14] Accordingly, under Rule 45(d)(3), Defendants have filed this miscellaneous action moving to quash the subpoena in "the

---

[12] *See generally supra* note 10.

[13] *See generally* Amato Decl. & Ex. A [Nov. 18, 2015 Notice at Document Requests], Ex. B [Dec. 3, 2015 Notice at Document Request]; Brown Decl.; McGowan Lemberg Decl.; Poon Decl.; Van Panhuys Decl.

[14] *See* Amato Decl. & Ex. A [Nov. 18, 2015 Notice at Scheds. A, ¶ 3], Ex. B [Dec. 3, 2015 Notice at Sched. A, ¶ 3].

court for the district where compliance is required."[15]

## ARGUMENT

**I.    DEFENDANTS HAVE STANDING TO MOVE TO QUASH PLAINTIFFS' SUBPOENAS DUE TO THEIR INTERESTS AND THEIR EMPLOYEES' INTERESTS IN THE REQUESTED PHONE RECORDS.**

It is hornbook law that a party that "'claims some personal right or privilege with regard to the documents sought'" has standing to move to quash or to seek a protective order barring enforcement of a subpoena directed to another party. Wright & Miller, 9A Fed. Prac. & Proc., § 2459 (3d ed.), *quoted by Winter v. Bisso Marine Co.*, No. CIV. A. 13-5191, 2014 WL 3778833, at *1 (E.D. La. July 29, 2014); *Clark v. Johnson.*, No. 14-cv-582, 2015 WL 4694045, at *2 (N.D. Okla. Aug. 6, 2015) (standing requires "a claim of privilege, or personal or proprietary interest"); *Martinez v. Target Corp.*, 278 F.R.D. 452, 453 (D. Minn. 2011) (granting former Target employee's motion to quash Target's subpoena to her present employer for documents relating to her); *Floorgraphics, Inc. v. News American Marketing In-Store Servs., Inc.*, No. 07-27 (PJS/RLE), 2007 WL

---

[15] Jurisdiction over Defendants' motion in the alternative for a protective order is also proper.  Where, under Rule 45(d)(3), a party has filed an action moving to quash subpoenas in the district where compliance is required, that same court may properly hear an accompanying motion for a protective order under Rule 26(c)(1), which permits "mov[ing] for a protective order in the court where the action is pending." *See, e.g., Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729, 732 (8th Cir. 2002) (where subpoenas' underlying action was in Nebraska District Court, finding it proper under Rule 45 for "Minnesota District Court . . . to rule on the motion to quash . . . those subpoenas and the document requests attached thereto" and affirming order partly granting and partly denying "motion seeking a protective order, pursuant to Fed. R. Civ. P. 26(c), directing . . . that the documents need not be produced"); *U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 30 (D.D.C. 2014) (where motion was brought under "[Rules] 26 and 45 to quash [a] subpoena duces tecum" from an action in the Eastern District of Michigan, ruling on the merits under both Rules 26 and 45).

1544572, at *5 (D. Minn. May 23, 2007) (granting motion to stay and remit enforcement of subpoena duces tecum directed to non-party); Fed. R. Civ. P. 45(d)(3)(A)(iii).[16] Phone users and account holders have such a legally recognized right to, and interest in, the confidentiality and privacy of their phone records. *Clark*, 2015 WL 4694045, at *2 (finding that party had interest in "cell phone information" in possession of phone carrier); *Winter*, 2014 WL 3778833, at *1 (same for "cell phone usage").[17]

Accordingly, courts consistently permit third parties to challenge subpoenas to

---

[16] *See also Shukh v. Seagate Tech.*, LLC, 295 F.R.D. 228, 234-36 (D. Minn. 2013) (affirming order granting party's motion for protective order barring enforcement of subpoenas directed to non-parties because they amounted to "a fishing expedition" and "the information being sought [wa]s simply too collateral"). The *Shukh* court also noted in dicta that "parties to whom subpoenas are not directed lack standing to quash or modify such subpoenas on the basis that the subpoenas impose an *undue burden*" on their recipients. *Id.* (emphasis added). To be clear, Defendants here do not claim standing based on any burden on the Phone Carriers. Rather, Defendants' standing is based on the interests of Defendants and their own employees in the confidentiality and privacy of their own phone records.

[17] The phone numbers at issue here include area codes for California, Illinois, New Jersey and Texas. *See supra* at 6 & n.10. Courts in all of those states have recognized the right of phone users and account holders to the confidentiality and privacy of their phone communications. *E.g.*, *In re Nickelodeon Consumer Priv. Litig.*, No. 12-07829, 2014 WL 3012873, at *18 (D.N.J. July 2, 2014) ("New Jersey explicitly recognizes a right to informational privacy, which encompasses . . . phone logs") (punctuation omitted); *Carlson v. Lapuszynski*, No. A-10-CA-130, 2011 WL 613513, at *2 (W.D. Tex. Feb. 15, 2011) ("The Plaintiffs have failed to demonstrate that this request is sufficiently likely to result in discoverable evidence to outweigh the invasion of privacy that occurs when an individual is compelled to produce his phone records."); *Lewis v. Chicago Hous. Auth.*, No. 91-cv-1478, 1991 WL 173247, at *2 (N.D. Ill. Sept. 4, 1991) ("[W]e find that the original subpoena of the Illinois Bell Telephone Company records was overly broad and an invasion of privacy"); *State v. Hunt*, 450 A.2d 952, 957 (N.J. 1982) ("'[A] telephone subscriber has a reasonable expectation that the calls he makes will be utilized only for the accounting functions of the telephone company'") (quoting *People v. Blair*, 602 P.2d 738, 746 (Cal. 1979) (en banc)).

phone carriers seeking their phone records. *E.g.*, *Clark*, 2015 WL 4694045, at *2 ("Plaintiff has standing to challenge the Tracfone subpoenas to determine whether her privacy rights in the cell phone records are outweighed by the relevance of those records to any party's claims or defenses herein."); *Winter*, 2014 WL 3778833, at *2 ("[Party] has standing to object to the subpoena [to Verizon] because it implicates his personal interest in the privacy of his cell phone records."); *accord Burdette v. Panola Cnty.*, 83 F. Supp. 3d 705, 706 (N.D. Miss. 2015) (permitting party to challenge subpoena to phone company); *Hampton v. Steen*, No. 12-cv-00470, 2014 WL 5496454, at *6 (D. Or. Oct. 24, 2014) (same); *Global Oil Tools v. Barnhill*, No. 12-1507, 2012 WL 6003745, at *3 (E.D. La. Nov. 30, 2012) (same); *see also Jones v. St. Francis Hosp.*, No. 4:13-cv-446, 2014 WL 7140405, at *1 (M.D. Ga. Dec. 12, 2014) (noting prior order permitting defendant to move to quash subpoena to Verizon).

In this case, Plaintiffs seek phone records relating to phone numbers issued by Defendants to their employees or used by Defendants' employees partly or entirely for business use.[18] Under the multitude of cases cited above, Defendants and their employees have a legally recognized right to, and interest in, the confidentiality and privacy of their phone records.[19] Indeed, this information could be used to assemble a thorough picture of

---

[18] *See generally* Amato Decl. & Ex. A [Nov. 18, 2015 Notice at Document Requests], Ex. B [Dec. 3, 2015 Notice at Document Request]; Brown Decl.; McGowan Lemberg Decl.; Poon Decl.; Van Panhuys Decl.

[19] Corporate entities such as Defendants have standing to assert both their own interests in the confidentiality of their records and the privacy interests of their employees. *E.g.*, *United States v. Hubbard*, 650 F.2d 293, 305-06 (D.C. Cir. 1980) (finding that church had standing to oppose disclosure of its records based on its own "protectible privacy

Defendants' core business practices for over a decade, as well as the personal phone correspondence of Defendants' employees. Defendants thus have standing to challenge Plaintiffs' subpoenas.[20]

## II.     THE SUBPOENAS ARE OVERBROAD AND SHOULD BE QUASHED.

A subpoena seeking "telephone call records should be reasonably limited to relevant records," and must be quashed if overbroad. *Allstate Ins. Co. v. Nassiri*, No. 2:08-cv-00369-PMP, 2011 WL 318101, at *2 (D. Nev. Jan. 21, 2011) ("[T]he request for production of all of Defendants' business telephone records [for five years] is overbroad."). Courts thus routinely quash or grant protective orders barring enforcement of subpoenas for phone records based on overbreadth. *See, e.g., Clark*, 2015 WL 4694045, at *2 (quashing subpoenas for seven months of phone records as overbroad, except for a *one-hour* window of demonstrated relevance); *Burdette*, 83 F. Supp. 3d at 706-07; *Hampton*, 2014 WL 5496454, at *6 (quashing subpoenas to U.S. Cellular and Frontier Communications for three to six years of phone records because they sought "a large amount of material, much of which is irrelevant and private"); *see also Jones*, 2014 WL 7140405, at *1 (where defendant corporation moved to quash subpoena to Verizon for records of its employee and court performed *in camera* review, holding that plaintiff

---

interest" and "to assert in good faith the privacy interests of [its] members" against such disclosure); *Whittall v. Henry Schein, Inc.*, No. 05-cv-1629, 2006 WL 902571, at *3-4 (E.D. Cal. Apr. 5, 2006) (citing cases) ("Both corporate and individual privacy rights are at issue here."; "The right to privacy of individuals, [] which defendants have a right to assert on behalf of absent third parties, . . . is a powerful privilege under California law.).

[20] Defendants maintain their position that they do not have possession, custody or control over the personal cell phones or cell phone records of their employees.

"should not be permitted to scour all of [employee's] telephone and text message records for a nearly 2 year period"; "Plaintiff must narrow her request to shorter spans of time and explain why the mere fact that a call or message occurred, without the content of that call or message, is likely to lead to relevant evidence."); *United States v. Fed'n of Physicians & Dentists, Inc.*, 63 F. Supp. 2d 475, 480 (D. Del. 1999).

*Burdette* is a useful illustration. In that case, after an employee sued his former employer for unpaid wages and retaliation, the employer issued a subpoena to AT&T seeking the following phone records: "[a]ny and all calls and text messages made from and received from the following number 662-519-1290 in the custody and control of AT&T for the dates of April 23, 2012, beginning 1:00 p.m. through May 27, 2012." 83 F. Supp. 3d at 706. The court quashed the subpoena, holding that "the breadth of the request is entirely too wide *even if a valid reason for the request had been established.*" *Id.* at 707 (emphasis added). Moreover, "the time period for which the request is made is overbroad in that it includes twenty days after plaintiff's termination." *Id.*

*Physicians* is also instructive. There, the plaintiffs subpoenaed "15 months" of phone records in an effort to show an antitrust conspiracy among the defendant federation's members by "document[ing] contacts among [them]." 63 F. Supp. 2d at 480. The court acknowledged the plaintiffs' purpose of "[p]roving a conspiracy in the context of an antitrust case by circumstantial evidence," but nevertheless upheld the defendants' objections and refused to compel production. *Id.* at 478. As the court explained, such a broad request for "hundreds of pages of phone records dating back 15 months" would sweep in a significant amount of "unresponsive information" and also raised

12

confidentiality concerns. *Id.* at 480.

Here, Plaintiffs' subpoenas to the Phone Carriers also request sensitive information about Defendants' and their employees' business and personal communications in an effort to show an antitrust conspiracy—but for staggeringly longer time periods that mostly range from *seven to twelve years*.[21] If a subpoena for phone records spanning "15 months" is too long in the context of an alleged antitrust conspiracy, then clearly so are subpoenas that span seven to twelve years and target dozens of employees. *See id.*; *accord Hampton*, 2014 WL 5496454, at *6 (three to six years); *Jones*, 2014 WL 7140405, at *1 (less than two years). Indeed, Plaintiffs seek records for some phone numbers through December 31, 2011, even though their claims are limited to purchases that occurred before May 31, 2011.[22]

Moreover, Plaintiffs have not shown that the phone numbers listed were used to support an antitrust conspiracy continuously for up to twelve years, nor could they. A limited review of just some of the phone number entries reveals that at least 29 correspond to individuals who were not employed by Defendants in the United States for months or years of the requested period.[23] Courts have quashed subpoenas for phone

---

[21] *See* Amato Decl. ¶¶ 2-3 & Ex. A [Nov. 18, 2015 Notice at Document Requests], Ex. B [Dec. 3, 2015 Notice at Document Request].

[22] *See id.* ¶ 2 & Ex. A [Nov. 18, 2015 Notice at Document Requests]; *see also supra* at 4-5 & n.6.

[23] *See generally* Amato Decl. & Ex. A [Nov. 18, 2015 Notice at Document Requests], Ex. B [Dec. 3, 2015 Notice at Document Request]; Brown Decl.; McGowan Lemberg Decl.; Poon Decl.; Van Panhuys Decl.

records because they extended "twenty *days*" beyond the phone user's employment period, let alone several years. *Burdette*, 83 F. Supp. 3d at 706-07 (emphasis added).

Compounding these problems, Plaintiffs' subpoenas seek records not only for the 88 listed phone number entries, but also "any and all *associated* phone numbers."[24] The term "associated" is undefined and ambiguous. For example, would a different number used by the same employee qualify? Even if it was a non-work phone? How could the Phone Carriers tell the difference? Or is *every* phone account with a given Phone Carrier held by the same Defendant an "associated phone number"? Under any interpretation, these subpoenas are wildly overbroad.

While the precise boundaries of the subpoenas are thus not ascertainable, it is clear that they sweep in a massive amount of confidential and private information irrelevant to this case. Plaintiffs' requested dragnet would leave them with a comprehensive multi-year index, for 88 phone number entries, of (i) all personal calls and text messages between each employee and his or her friends and family members; (ii) all business calls with customers and suppliers; (iii) all business calls that were unrelated to the market for and pricing of lithium ion batteries; and (iv) all business calls with fellow employees of the same Defendant. A subpoena with such "breadth . . . is entirely too wide even if a valid reason for the request had been established." *Burdette*, 83 F. Supp. at 707.[25]

---

[24] *See* Amato Decl. ¶¶ 2-3 & Ex. A [Nov. 18, 2015 Notice at Document Requests], Ex. B [Dec. 3, 2015 Notice at Document Request] (emphasis added).

[25] As discussed above, a corporation has standing to object on confidentiality and privacy grounds on behalf of both itself and its employees. *See supra* note 19.

Following the revisions to the Federal Rules that took effect on December 1st, it

has only become clearer that Plaintiffs must show the relevance of the requested phone

records *throughout* the listed time periods. Rule 26(b)(1) now requires that discovery be

"proportional to the needs of the case, considering the importance of the issues at

stake"—and the burden of showing such importance lies on the "party claiming that [the]

request is important." Fed. R. Civ. P. 26(b)(1) & Adv. Comm. Notes (2015). Plaintiffs

have failed to make any such showing of sustained relevance and importance throughout

time periods of up to twelve years, let alone that this outweighs the enormous intrusion

on the confidentiality and privacy rights of Defendants and dozens of their employees.

Accordingly, the Court should quash Plaintiffs' subpoenas or grant a protective order

barring their enforcement.

## III.   THE SUBPOENAS SEEK INFORMATION PROTECTED UNDER CALIFORNIA LAW AND SHOULD THEREFORE BE QUASHED.

Separate and apart from being overbroad, Plaintiffs' subpoenas also violate the

express terms of Section 2891 of the California Public Utilities Code, which Plaintiffs

have conceded applies to the subpoenas at issue.[26] Section 2891 provides as follows:

> No telephone or telegraph corporation shall make available to
> any other person or corporation, without first obtaining the
> residential subscriber's consent, in writing, any of the
> following information: (1) The subscriber's personal calling
> patterns, including any listing of the telephone or other access
> numbers called by the subscriber . . . .

Cal. Pub. Util. Code § 2891. Under Section 2891 as construed by California's state

---

[26] Brown Decl. ¶ 10.

appellate court, a subpoena for landline or cell phone records is invalid unless the

residential subscriber has provided written consent:

> [Defendant's] cell phone company, Verizon, is a public
> utility. [Plaintiff] could not have subpoenaed [defendant's]
> cell phone records from a public utility without his signed
> consent: *"A subpoena duces tecum for personal records
> maintained by a telephone corporation* which is a public
> utility, as defined in Section 216 of the Public Utilities Code,
> *shall not be valid or effective unless it includes a consent to
> release, signed by the consumer whose records are requested,
> as required by Section 2891 of the Public Utilities Code."*

*Ricardez v. Tedesco*, No. 2d Civ. B237903, 2013 WL 6061596, at *4 (Cal. Ct. App. Nov.

18, 2013) (citations omitted) (emphasis added) (quoting Cal. Civ. Proc. Code § 1985.3);

*see also Gray v. FedEx Ground Package Sys.*, 799 F.3d 995 (8th Cir. 2015) (federal court

construing state law must "follow decisions from the intermediate state courts when they

are the best evidence of [state] law.").[27]

A number of courts have applied Section 2891's consent requirement to reject

attempts to compel phone companies to produce records of California phone numbers.

*See, e.g., Ades v. Omni Hotels*, No. 13-cv-02468, ECF No. 124, slip op. at 1-2 (C.D. Cal.

May 18, 2015) (citing cases) ("[S]ection 2891(a) applies to cellular telephone subscribers

. . . [U]nder section 2891, the information sought should not be released to plaintiffs [by

Verizon] without the subscribers' express consent"); *Birchmeier v. Caribbean Cruise

Line*, No. 12-cv-04069, ECF No. 288 (N.D. Ill. Mar. 20, 2015) (applying Section 2891

and denying motion to compel T-Mobile to produce phone records for California

---

[27] The limited exception to this rule for subpoenas issued "for law enforcement purposes"
is, on its face, inapplicable here. *See* Cal. Pub. Util. Code. § 2894(a).

subscribers); Mar. 20 Hr'g Tr. 4:4-9:1, *Birchmeier*, No. 12-cv-04069, ECF No. 302 (N.D. Ill. May 28, 2015) (same; analyzing Section 2891 in detail); Amato Decl. Ex. D [*Tataryn v. Barnett*, 08 FL 00527 (Cal. Super. Ct. June 9, 2014) ("[S]ection 2891 (a)(l) applies to mobile phone records. Therefore, the documents may not be released without the customer's written consent")]; *see also In re Farsheedi*, No. C 09-3888 JF, 2009 WL 4572745, at *1 (N.D. Cal. Dec. 4, 2009) (discussing bankruptcy court's order "holding that T-Mobile is a wireless telecommunications provider covered under Public Utilities Code § 2891" and "denying the motion to compel" based on lack of consent). Moreover, "the decision whether to consent is left to the subscriber," even if information relevant to a litigation is sought. *Ades*, No. 13-cv-02468, ECF No. 124, slip op. at 2.

Here, Plaintiffs seek records for phone numbers with California area codes from all four Phone Carriers, including 25 from AT&T, 11 from Cellco, two from Sprint and one from Verizon.[28] Plaintiffs have failed to make the necessary showing that (i) these California phone numbers did not belong to residential subscribers in California, such as employees of Defendants who used personal cell phones partly for business; or (ii) the subscribers consented to the release of their records. Indeed, Sprint objected to Plaintiffs' subpoena and refused to provide the requested information for California subscribers on this basis.[29] Moreover, neither Defendants nor, to Defendants' knowledge, their

---

[28] *See generally* Amato Decl. & Ex. A [Nov. 18, 2015 Notice at Document Requests], Ex. B [Dec. 3, 2015 Notice at Document Request]; Brown Decl.; McGowan Lemberg Decl.; Poon Decl.; Van Panhuys Decl.

[29] *See* Amato Decl. Ex. C [Ltr. from Sprint Subpoena Compliance Dep't to Brian Clark, Nov. 19, 2015 ("Without your provision of notarized written consent of the customer,

employees have consented to the release of any of these records.[30] The Court therefore should quash or grant a protective order barring enforcement of the subpoenas.

## CONCLUSION

As shown above, Plaintiffs' subpoenas for phone records are overly broad and thus intrude significantly upon Defendants' confidentiality and privacy interests in their phone records. They also violate California statutory law. Defendants thus respectfully request that this Court quash or, in the alternative, enter a protective order barring enforcement of Plaintiffs' subpoenas.

Dated: December 11, 2015

**BRYDEN LAW FIRM, LLC**

By: _____
Daniel C. Bryden (#0302284)
5646 Washburn Avenue South
Minneapolis, MN 55410
Telephone: (612) 245-8972
Email: dan@brydenlawfirm.com

*Counsel for All Movants*[31]

A. Paul Victor
Jeffrey L. Kessler
Eva W. Cole
Jeff J. Amato

---

your request is ineffective and will not be fulfilled. *See* California Public Utility Code § 2891")].

[30] *See* Amato Decl. ¶ 12; Brown Decl. ¶¶ 9-10; McGowan Lemberg Decl. ¶ 9; Poon Decl. ¶ 8; Van Panhuys Decl. ¶ 11.

[31] The additional counsel listed below will file motions for admission *pro hac vice* before making any appearances in this matter.

**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
pvictor@winston.com
jkessler@winston.com
ewcole@winston.com
jamato@winston.com

Ian Papendick
Diana L. Hughes
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-6904
Facsimile: (415) 591-1400
ipapendick@winston.com
dhughes@winston.com

Roxann E. Henry
**MORRISON &FORESTER, LLP**
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006-1888
Telephone: (202) 887-1500
Facsimile: (202) 887-0763
rhenry@mofo.com

*Counsel for Panasonic Corporation, Panasonic Corporation of North America, Sanyo Electric Co., Ltd. and Sanyo North America Corporation*

Reginald Steer
Mollie McGowan Lemberg
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street, Suite 1500
San Francisco, California 94104-1036
Telephone: (415) 765-9500
Facsimile: (415) 765-9501

rsteer@akingump.com
mmcgowanlemberg@akingump.com

Hyongsoon Kim
**AKIN GUMP STRAUSS HAUER &
FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3010
Telephone: (310) 229-1000
Facsimile: (310) 229-1001
kimh@akingump.com

Catherine Creely
**AKIN GUMP STRAUSS HAUER &
FELD LLP**
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
ccreely@akingump.com

*Counsel for LG Chem, Ltd. and LG
Chem America, Inc.*

Craig P. Seebald
Jason A. Levine
Lindsey R. Vaala
**VINSON & ELKINS LLP**
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6585
Facsimile: (202) 879-8995
cseebald@velaw.com
lvaala@velaw.com

Matthew J. Jacobs
**VINSON & ELKINS LLP**
525 Market Street, Suite 2750
San Francisco, California 94105
Telephone: (415) 979-6990
Facsimile: (415) 651-8786

mjacobs@velaw.com

*Counsel for Maxell Corporation of America and Hitachi Maxell, Ltd.*

John C. Dwyer
Stephen C. Neal
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 857-0663
dwyerjc@cooley.com
nealsc@cooley.com

Beatriz Mejia
Matthew M. Brown
**COOLEY LLP**
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
mejiab@cooley.com
mmbrown@cooley.com

*Counsel for Sony Corporation, Sony Energy Devices Corporation, and Sony Electronics, Inc.*

Robert B. Pringle
Paul R. Griffin
Sean D. Meenan
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
rpringle@winston.com
pgriffin@winston.com
smeenan@winston.com

*Counsel for NEC Corporation*

George A. Nicoud III
G. Charles Nierlich
Robert E. Kim
Angela Y. Poon
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Facsimile: (415) 393-8306
tnicoud@gibsondunn.com
gnierlich@gibsondunn.com
rkim@gibsondunn.com
apoon@gibsondunn.com

*Counsel for NEC TOKIN Corporation*